THE PEOPLE ex rel. JOHN McCABE, Respondent, *v.* THE BOARD OF FIRE COMMISSIONERS OF THE CITY OF NEW YORK, Appellant.

106   257
123   660
106   257
142   354

The provision of general orders No. 13 of the Board of Commissioners of the Fire department of the city of New York, series of 1881 (par. 5, § 3), which provides that every officer and member of the uniformed force of the department shall "be responsible for any want of judgment, skill  *  *  *  which may cause unnecessary loss of life, limb or property," refers to a loss which has actually resulted, not to one which might have happened.

Where, therefore, no actual loss has been occasioned by an act of a member of the force complained of, he cannot be held responsible under said provision.

Where the determination of an inferior tribunal, brought up for review by *certiorari*, has been reversed by the court granting the writ as against the weight of evidence, and the evidence is such that the court, guided by the rules governing it on application to set aside the verdict of a jury, would have power so to do, the decision is not reviewable here.

The provision of the Code of Civil Procedure (§ 2140), specifying the questions involving the merits which may be determined by the court on return to a writ of *certiorari*, has no application to a hearing on appeal to this court, and in no way enlarges its jurisdiction; it is confined in its operation to the court in which the hearing is originally had.

*It seems* that in a case involving a plain violation of the well-known rules governing applications for a new trial on the ground that the verdict is against the weight of evidence, or where it can be seen that there was an abuse of the discretion of the court below in its decision on such a hearing, this court may review the decision.

(Argued June 7, 1887; decided June 21, 1887.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made March 2, 1887, which reversed, on *certiorari*, the proceedings of the defendant removing the relator from the office of second chief of the fire department of the city of New York and reinstated him in his office.   (Reported below, 43 Hun, 554.)

The material facts are stated in the opinion.

*David J. Dean* and *Wm. L. Findley* for appellant.   The fire commissioners had jurisdiction to make the order dismiss-

ing the relator, and in their proceedings have complied with every condition prescribed by the statute which defines their powers. (Consolidation Act, § 440.) Under the statute it is the exclusive province of the commissioners, first, to determine whether the issue of the unnecessary order authorizes an inference of incapacity; secondly, to determine whether the facts proven justify and excuse the issue of the unnecessary order; thirdly, to fix the penalty. Any invasion of the power thus reserved to the commissioners by the court is a usurpation of power which the statute has not conferred upon the court. (*People ex rel. Hart v. Fire Com'rs*, 82 N. Y. 358; *People ex rel. Masterson v. Fire Com'rs*, 96 id. 644; *People ex rel. Folk v. B'd of Police*, 69 id, 411; 82 id. 255; *People ex rel. Conklin v. Fire Com'rs*, 40 Hun, 631; *People ex rel. Kent v. Fire Com'rs*, 100 N. Y. 82; *People ex rel v. B'd of Police*, 39 id. 517.) It was not necessary to establish a defect of general capacity in the relator, but a defect of capacity for his particular office. (*People ex rel. Folk v. B'd of Police*, 69 N. Y. 408; *People ex rel. Hart v. Fire Com'rs*, 82 id. 358; *People ex rel. Masterson v. Fire Com'rs*, 96 id. 644.)

*Elihu Root, Roswell D. Hatch* and *Geo. B. McCloskey* for respondent. The determination by the board of fire commissioners of the relator's guilt upon charges was subject to review by the General Term on *certiorari*. (Code of Civ. Pro., § 2140; *People ex rel. Dumahaut v. Fire Com'rs*, 96 N. Y. 672; *People ex rel. Munday v. Fire Com'rs*, 72 id. 445; *People ex rel. Mayor, etc.*, v. *Nichols*, 79 id. 588.) The decision of the General Term, being on the facts, is not reviewable here. (*People ex rel. Murphy v. French, Com'rs, etc.*, 92 N. Y. 306, 310.)

Peckham, J. The relator was second assistant chief of the fire department of the city of New York. On the 14th of July, 1886, charges were preferred against him by the chief of the department, charging him first, with incapacity, in that being in command at a fire which occurred in Third

avenue, at One Hundred and Twenty-fifth street, at or about 6.25 p. m. of July fifth of that year, he did unnecessarily send or cause to be sent at 7.25 p. m. the telegraphic signal known as the "simultaneous call" thereby summoning to the station 767 in Harlem, all of the fire extinguishing apparatus and uniformed force of the department then in quarters on Manhattan Island north of Fourteenth street, excepting engines 14 and 16 and the second section of engine company 26, thereby without due cause and reason uncovering and depriving of all fire extinguishing apparatus and seriously endangering life and property in a large and important section of the city during the celebration of Independence day when fires are invariably of very frequent occurrence, and when it was of the utmost importance that no part of the fire extinguishing apparatus should unnecessarily be out of quarters, and that he did thereby evince an incapacity or want of skill in performing the duties of second assistant chief of department in violation of section 440 of the New York city consolidation act of 1882.

The second charge was that he sent out such "simultaneous call" under the circumstances above detailed "without due cause and reason and for want of judgment or skill on his part, which *may have caused* unnecessary loss of life, limb or property, uncovering and depriving of all fire extinguishing apparatus and seriously endangering life and property in a large and important section," etc., as in first charge alleged.

The accused was duly served with a copy of the charges and cited to appear before the board at a certain time and place. Pursuant to such citation he did appear in person and by counsel, and after pleading not guilty to the charges, the trial was in due course proceeded with.

Witnesses were sworn and examined on the side of the prosecution and defense, and the testimony being closed, the board, after deliberation, and on the 21st of July, 1886, found the relator guilty of both charges and sentenced him to be be dismissed from the force of the department, to take effect from 6 o'clck p. m. of that day.

The first charge it will be seen refers to the act of the relator as coming within section 440 of the consolidation act, which provides for the government and discipline of the fire department, and that it shall be such as the board may, from time to time, by rules, regulations and orders prescribe.

The section gives the board power, on conviction of a member of the force, of, among other things, incapacity  *  *  * to punish the offending party by reprimand, forfeiting and withholding pay  *  *  *  or dismissal from the force.

The second charge is founded, in addition to the violation of the said section of the consolidation act, upon section 3,. paragraph 5, of general orders No. 13, O. B. C., series of 1881, which provides that every officer and member of the uniformed force of the department shall *conform to the following rules :*

" 3. Be responsible for any want of judgment, skill, neglect or failure which may cause unnecessary loss of life, limb or property."

There is no pretense of any evidence showing that any want of judgment, skill, neglect or failure of the relator did, as matter of fact, cause unnecessary or any loss of life, limb. or property.   Upon the proper construction of the language used in the rule above quoted, we agree with the learned General Term.   The want of judgment or skill for which, under that rule, the officer must be responsible, is a want from which unnecessary loss of life, limb or property has. resulted.   In this case no loss at all resulted from any want of judgment or skill on his part.   The General Term properly held, therefore, that there was no evidence whatever which sustained the conviction upon the second charge, so far as it alleged a violation of the rule of the board.   The charge itself is not in accordance with the rule, for it alleges a responsibility for want of judgment, etc., which "*may have caused unnecessary loss,*" while the rule is, " which may cause unnecessary loss," etc.   The charge was in relation to a past act; and in using the words "may have caused," evidently meant that there was, at the time of the performance of the

act, a possibility of such loss occurring from such want of skill, although none in fact occurred. The rule itself is a general one, and provides for future contingencies, and uses language which plainly shows that it refers to those cases only where unnecessary loss of life or property actually resulted from the want of judgment or skill. After striking out any alleged violation of the rule in question, the two charges are substantially identical, and limit the accusation to a general charge of incapacity.

A large amount of evidence was taken, which, in relation to the actual facts, is not substantially contradictory. In the view we take of our power, it is, however, wholly unnecessary to enter at length upon a discussion as to what the evidence proves.

The charge of incapacity was confessedly based upon the one act embraced in the written charges of sending out, under the circumstances, the "simultaneous call" Prior to this time the relator had been regarded as a capable officer, fit, in the opinion of his chief, to be trusted with command at fires, and. in truth, he had been frequently so trusted. and no hint had ever been suggested of his unfitness for such command. In sending out the call, it is not pretended that he did otherwise than act, under an emergency, upon his best judgment, but in so doing, in the opinion of several of the witnesses, he very greatly erred and showed positive incapacity.

From the facts proved, there were inferences to be drawn as to whether or not he was incapable. Looking at all the evidence and taking all the facts into consideration, and drawing what it regarded as the natural and proper inference therefrom, the General Term came to the conclusion that such facts did not warrant the inference of incapacity, which the board of commissioners drew therefrom, and hence, as it had the right to do, it reversed the finding of the board on the facts and reinstated the relator. This right is given to that court by section 2140 of the Code, which provides for a review of the determination by common law *certiorari* by the court granting the writ, and upon the hearing on the

return, that court may inquire, among other things, whether there was any competent proof of all the facts necessary to be proved, and if so (subdivision 5), " whether there was, upon all the evidence, such a preponderance of proof against the existence of any of those facts that the verdict of a jury affirming their existence, rendered in an action in the Supreme Court, triable by a jury, would be set aside by the court as against the weight of evidence."

From the decision of the General Term, that court, it is plain, in reversing the decision of the board acted under the subdivision just quoted, of the section above referred to. The board of fire commissioners have appealed from this determination of the General Term and we are asked to review and reverse it.

We think we have no power to do so   The evidence taken in the proceedings is such that a court guided by the rules governing it on applications to set aside a verdict of a jury as against the weight of evidence, would have that power.

It is an application addressed to the sound discretion of the court, guided, of course, by well known legal principles, but still largely dependant upon its discretion and to be exercised upon a careful review of all the evidence, its legitimate bearing and the proper weight to be given it. Generally, in granting or refusing such application, no error of law is committed. If the evidence be of such a character as to call reasonably and properly for the exercise of this sound discretion of the tribunal issuing the writ, its decision either way will not be reviewed here unless our jurisdiction has been enlarged in common with that court, by the section of the Code above alluded to

Prior to its adoption this court, in a series of decisions which somewhat amplified its jurisdiction in reviewing the determination of the other courts upon writs of *certiorari*, still confined its powers of review to the inquiry whether the tribunal making the determination had jurisdiction and whether there was any evidence tending to support its determination, and whether any rule of law, affecting the rights of the party,

had been violated. Since the adoption of that section, many appeals have been brought here for review and the expressions of the judges as to the power of the court, have been quite uniform in opposition to any such jurisdiction as is now invoked, but yet, in most of them, the section in question has not been adverted to or brought to their attention, and there has been as yet no authoritative decision of the question with the section distinctly brought to the attention of the court.

In *People* v. *French* (92 N. Y. 306), the question to be reviewed here arose prior to September 1, 1880, the time when this part of the Code went into effect, and it was held that by its express provisions the review was to be had upon the law as it stood when the question arose. But this court was asked in that case to take jurisdiction and review the facts under that section. It was decided that no review could be had thereunder for the reasons above stated.

Ruger, Ch. J., continued his opinion after such statement and said : " But beyond this it is quite apparent that section 1240 has no application to appeals to this court from decisions made upon the hearing of common law *certioraris.* The provision quoted is by its terms confined to proceedings occurring at the hearing upon the return of the writ and must necessarily be confined to the court in which such hearing is had. The general scheme for the distribution of judicial powers established by the laws and practice of the State does not contemplate the review by this court of disputed questions of fact, and it will not entertain such questions in the absence of express provisions of law authorizing such review."

In *People* v. *Board of Police Commissioners* (93 N. Y. 97), Miller, J., uses the language of this section without referring to it, but assuming the application of the rule held that no cause for interference was shown. That was a case where the board dismissed a member of the force, and the General Term affirmed the determination and this court refused to interfere.

A reference to some of the sections which precede and follow the one in question, strengthens the correctness of the

view taken in the ninety-second of New York (*supra*); section 2138 provides that the hearing must be had at a General Term of the court, and either party may notice for such hearing after the return is complete ; by section 2141, the court may make a final order annulling or confirming, wholly or partly, or modifying the determination reviewed, as to any or all the parties ; and, by section 2144, the final order of the court must be entered in the office of the clerk where the writ was returnable ; but, before it can be enforced, an enrollment thereof must be filed.    For that purpose the clerk must attach together and file in his office the papers upon which the cause was heard ; a certified copy of the final order, and a certified copy of each order which, in any way, involves the merits or necessarily affects the final order.    All these sections clearly provide for the order which is made upon the original hearing before the court granting the writ, and do not, in anywise, provide for the hearing upon an appeal here.

We are quite clear, therefore, that our jurisdiction is not enlarged by the section of the Code under consideration.    As there was enough in the evidence to call for the exercise of the discretion of the Supreme Court in reversing on the facts as against the weight of evidence, we cannot interfere with its determination on that question.

We do not mean to say that, under no circumstances, could we review such determination.    In cases involving a plain violation of the well known rules governing applications for a new trial on the ground that the verdict is against the weight of evidence, or when it could be seen that there was an abuse of the discretion of the court, and, possibly, in some other cases, this court might review the decisions of the lower court, but here is no such case.

The appeal should, therefore, be dismissed, with costs.    .

All concur.

Appeal dismissed.